## TEXAS LIQUOR CONTROL BOARD v. MACEO.

### No. 11188.

Court of Civil Appeals of Texas. Galveston.
Jan. 23, 1941.

Rehearing Denied Feb. 13, 1941.

Gerald C. Mann, Atty. Gen. of Texas, and Pirtle Watts, M. C. Martin, and Geo. W. Barcus, Asst. Attys. Gen. of Texas, for appellant.

Stone, Phipps & Dibrell, of Galveston, for appellee.

GRAVES, Justice.

On May 25, 1940, appellee, Frank Maceo, applied for a retail beer-and-wine permit to cover certain premises to be known and operated as the "Hollywood Dinner Club", located in part of a building situated at the northwest corner of the intersection of 61st street and avenue S, in the city of Galveston, Texas. Pursuant to question 34-a of the application form for such permit, he attached an architect's blueprint of the building, in which the rooms comprising the "Hollywood Dinner Club" to be covered by the permit were located, showing in detail the exact portion of the building involved. The space, as so shown, he took under written lease from Gulf Properties, Inc., a private corporation

under the laws of Texas, the owner of the building.

On the 8th day of June, 1940, in due course and after such investigation as the Texas Liquor Control Board saw fit to make, permit No. 35994 was issued to Frank Maceo, d.b.a. "Hollywood Dinner Club", whereupon appellee commenced his operation of the establishment as a cafe and night club.

Later, on the 22d day of June, 1940, it appears that J. C. Howerton, an undercover agent of the Liquor Control Board, and others visited the Hollywood Dinner Club, and by the express admissions of each of them who testified before the appellant Board, discovered no violation of law going on in that Club's leased premises. Howerton then visited certain adjoining premises, occupied by a corporation known as the Turf Athletic Club, of Galveston, where, he reported to the Board, he had discovered certain alleged violations of law—the possession of whiskey, and the operation of an open saloon—which were subsequently made the basis of the charges here involved against this appellee.

Thereafter, notice was issued by the Administrator of the Liquor Board to appellee to show cause why his permit should not be cancelled, and, on the 13th day of August, 1940, a hearing on such complaint was had in Austin before such Administrator.

The theory of the Board's examiner advanced at the hearing was not that appellee had directly himself, or by his agents, servants, or employees, in the "Hollywood Dinner Club", violated the law, but rather that there was a connection between appellee and the adjoining premises of the Turf Athletic Club together with a relationship of agency existing between appellee, Frank Maceo, and on Sam Maceo, who was apparently in charge of the Turf Club; further that, because of such connection and relationship, appellee was chargeable in law with the alleged violations discovered in such latter place.

Appellee, by counsel, specifically denied each and all of the allegations contained in the complaint, and on the hearing, in addition to the testimony of Mr. Howerton, numerous affidavits and exhibits were introduced, by both the Board and appellee.

After the hearing and before the Administrator's ruling, appellee filed therein written objections to certain parts of the evidence introduced by the Board, all but one of which were overruled by the administrator, to which rulings exceptions were duly taken.

On the 20th day of August, 1940, the Administrator entered his order cancelling appellee's permit, upon five findings of fact, which, reduced to their essence, are as follows: (1) That, on the date in question, appellee possessed whiskey on premises directly and indirectly under his control and adjacent to his licensed premises; (2) that, on the date in question, one Sam Maceo was an agent and employee of appellee, and did then and there possess whiskey on premises directly and indirectly under his control and adjacent to the licensed premises; (3) that, on the date in question, appellee possessed whiskey on the licensed premises; (4) that, on the date in question, Frank Maceo and his agent, servant, and employee Sam Maceo, did operate and assist in operating an open saloon on the licensed premises where distilled liquor was sold and offered for sale by the drink; (5) that, on the date in question, one Sam Maceo was an agent and employee of appellee, and did possess whiskey on the licensed premises.

After entry of this order, appellee, in compliance with the applicable provisions of the Texas Liquor Control Act, Article 666—14, of the Vernon's Annotated Penal Code, perfected his appeal to the District Court of Galveston County, Texas, where the matter was heard on the 6th day of September, 1940.

The only evidence introduced was a complete transcript of the proceedings had before the Administrator,. as is contained in the statement of facts now on file in this Court.

On the 26th day of September, 1940, the Court below entered its final judgment, holding " * * * that said transcript contains no substantial evidence upon which said Administrator of the Texas Liquor Control Board could have based his ruling questioned herein, (and) that such ruling is, therefore, arbitrary and unreasonable, and constitutes an abuse of the discretion vested in said Administrator," and setting aside and vacating the Administrator's order; hence this appeal by the Control Board.

Appellant assigns as error the trial court's action in setting aside the Administrator's order of cancellation because, it asserts, there was sufficient evidence to support each and all of the five given find-

ings of the Administrator, which it successively restates as follows:

"(1) The first finding made by the Administrator of appellant to the effect that about June 23, 1940, appellee did then and there possess on the premises in controversy covered by the license permit whisky, when he was not permitted under said license to sell whiskey; (2) the second finding of the Administrator of appellant, to the effect that about June 23, 1940, Sam Maceo, as agent and employee of appellee, did possess on the premises in question whisky; (3) the third finding of fact as made by Bert Ford, Administrator, to the effect that on or about June 23, 1940, Frank Maceo had in his possession on the premises in question whisky; (4) the fourth finding of said Administrator to the effect that on or about June 23, 1940, appellee, Frank Maceo, and his agents, servants and employees, to-wit, Sam Maceo, did then and there on the premises in question operate and assist in operating an open saloon, and were directly and indirectly interested in the operation of an open saloon in which they sold liquor, composed and compounded in part of distilled spirits, and offered for sale for beverage purposes same by the drink; (5) the fifth finding by the Administrator to the effect that Sam Maceo, as an employee of Frank Maceo, violated the provisions of the Texas Liquor Control Act by having in his possession on the premises in question whisky."

After careful study of this entire record, inclusive of the statement of facts in full, this court is unable to find existent such a state of the evidence; on the contrary, as its general statement supra has in part presaged, it not only finds no evidence whatever tending to support any finding that appellee, personally or through Sam Maceo as his agent and employee, either possessed any whiskey, or operated and assisted in operating an open saloon by selling or offering for sale whiskey by the drink, "on the premises in controversy covered by his license permit"; to the direct opposite, as the preceding statement recites, "by the express admissions of each of appellant's agents and inspectors who testified before its Administrator they discovered no such violation of law going on in the appellee's leased premises"; in other words, they each and all freely admitted that whatever derelictions they claimed to have encountered or suspected, all occurred beyond the precisely-defined area in the building the appellee's permit covered and in the adjacent premises that were just as definitely defined as being under lease by the Turf Athletic Club.

Indeed, this whole case—being thus made referable to and dependent upon what happened in the adjoining premises so occupied and exclusively controlled by the Turf Club, in the absence of any such legally sufficient proof of any relationship of agency between the appellee, upon the one hand, and Sam Maceo, who was apparently in charge of the Turf Club, upon the other, as would make the appellee answerable in law for the alleged violations that were testified to under Sam Maceo's operation of the adjoining place—constitutes, it is thought, a typical instance of such slight testimony, if that much, as only raises a mere surmise or suspicion of the existence of the infractions the administrator cancelled the appellee's permit upon; that is, in legal contemplation, they fell short of being "any evidence", under the rule so firmly embedded in our jurisprudence by our Supreme Court in Joske v. Irvine, 91 Tex. 574, 44 S.W. 1059.

In such instances of a paucity of substantial evidence of law violations, it is well settled that such a cancellation may be set aside by the courts: Texas Liquor Control Board v. Lanza, Tex.Civ.App., 129 S.W.2d 1153; Texas Liquor Control Board v. Jones, Tex.Civ.App., 112 S.W.2d 227; Texas Liquor Control Board v. Warfield, Tex.Civ.App., 110 S.W.2d 646; Bradley v. Texas Liquor Control Board, Tex. Civ.App., 108 S.W.2d 300; McCormick v. Texas Liquor Control Board, Tex.Civ.App., 141 S.W.2d 1004.

As the Supreme Court so imperishably said in the Joske case [91 Tex. 574, 44 S.W. 1063], the "policy of the law * * * does not permit the citizen to be deprived of his property, his liberty, or his life upon mere surmise or suspicion, and places upon a trained judiciary the grave responsibility of determining as a question of law whether the testimony [in a given case] establishes more" than that; responding to that duty, conceivably placed upon it in this instance, this court, as indicated, concludes that this evidence at most did not establish more—that there was a completely missing link as to any relationship of principal and agent between those so in charge of these two distinct but adjoining Clubs, which hiatus

relieved the appellee of any responsibility for the only violations of law the officers even hinted at—that is, those occurring only in the Turf Club which seems to have been under Sam Maceo's charge, and not in the Hollywood Club, that belonged to and was operated by the appellee.

■■ The circumstances apparently depended upon by the appellant to establish the responsibility of the appellee for the occurrences in the other Club seem to this court to have been inconsequential, and to have had no probative force, if not indeed to have been wholly inadmissible against the appellee, under the objections he made to all of them; for instance it was shown that the two Clubs, under written leases, occupied distinct portions of one very large building, with express provisions in both leases that the members of the Turf Club should at all times have the right of ingress and egress to its own rooms through the Hollywood Club's premises; that the restrooms of the latter were the common convenience of all other tenants of the building; that the appellee's premises came to him together with the furnishings, fixtures, and equipment therein at the time, which included all the existing public utilities of water, light, gas, telephone, etc.; that the leases of both parties were in writing, dated May 29 of 1940, running for one year, and that, while unrecorded, were not required to be; the circumstance that appellant's officers found on the tables in appellee's cafe match covers with the printing thereon: "Hollywood Dinner Club, Galveston Texas, Sam Maceo, Managing Director", to say the least of it, was an inconsequential feature that got nowhere, there being no testimony connecting it up as to time, or anything else, with the appellee; it was objected to as being hearsay and irrelevant, which should have been sustained, but even so, if left standing alone, it might have applied to wholly different conditions of many years prior and amounted to no more than a "spark", as some of the authorities term such a claim for evidence, or at most only a scintilla.

Neither was it of consequence that neither of the Maceos testified upon the cancellation hearing; the appellee had therein denied each and all of the allegations of the complaints against him, hence a conflict in the evidence, which the administrator could have disregarded or not, as he saw fit, was the only further result that could have been brought about by the testimony of either or both of them; the appellant's brief is inept in asserting these Maceos, Frank and Sam, to have been brothers, there being no evidence to that effect, and appellee's uncontroverted brief in that respect denied it.

■ The public utilities contracts the appellant refers to were furthermore subject to the appellee's objections that they were all too remote in time, that is, bearing dates of 1934, 1936, 1926 and 1933, whereas the affidavit of J. B. Fox, the appellant's witness at the cancellation hearing before the Administrator, showed the leased building to belong to the Gulf Properties, Inc.; and, as before indicated, the appellee's lease with that landlord called for a completely equipped place in those particulars; these objections also of the appellee were good, and should have been sustained.

■ This court passes over Inspector Howerton's recited dealings with Sam Maceo, but with the finding, however, that it fails to show that Sam Maceo ever therein connected himself up with appellee's "Hollywood Dinner Club", or that it showed him to have any connection with it as an agent for the appellee, or otherwise; his whole dealing and fraternizing with this inspector, as narrated by the latter, had to do with his own establishment, the Turf Club, and shows his concern only for what had occurred there, rather than anything that had happened in the appellee's cafe, for which the appellee was responsible; there was, therefore, no admissible proof whatever to sustain appellant's charges that Sam Maceo was an agent and employee of the appellee, wherefore appellee's objections before the Administrator to Howerton's conversations with Sam Maceo, on the ground that the statement of one claimed to be an agent of another, standing alone, could not be relied upon to prove such agency, should have been sustained, to say nothing of other good grounds that also were interposed.

Appellant is further inept in urging a discrepancy in the description of appellee's licensed premises, as shown on the blueprint attached to his application, and the premises as they existed in fact; this, because the Administrator found no such misrepresentation in his cancellation order; the blueprint shows a "passage" between the two clubs to have been plainly so marked

thereon, and Mr. Phelps, the Board's Chief Examiner, disclaimed, both before the Board and the trial court, having made any such contention.

Wherefore, it is held that the judgment of the trial court was correct, and should be affirmed; it will be so ordered.

Affirmed.

CODY, J., dissents.

CODY, Justice (dissenting).

I believe that substantial evidence was produced at the hearing before the Administrator to sustain his second finding of fact, that is, "(2) That, on the date in question, one Sam Maceo was an agent and employee, and did then and there possess whiskey on premises directly and indirectly under his control and adjacent to the licensed premises."

Now the "substantial evidence" of a law violation that will sustain the Administrator in cancelling a beer and wine permit is, of course, more than a mere scintilla of evidence. At the same time, I take it that it is less than the preponderance of evidence necessary to sustain the verdict of a jury. This about places it as not less than such evidence as would require a court in a civil case to submit a plaintiff's cause to a jury, though it might be less than sufficient to sustain such verdict against a complaint of being against the preponderance of the evidence.

The evidence in this case shows that the Hollywood Dinner Club and the Turf Athletic Club were in the same building, and connected by a passageway, and that those who would enter the premises of the Athletic Club must pass through the premises or dining room of the Hollywood Dinner Club. The evidence further shows that sometime after Howerton found he could not purchase whiskey in Hollywood Dinner Club, that he went through the passageway connecting it with the Athletic Club, as he saw others doing, and past two men, into the bar room of the Athletic Club. The two men just referred to testified that they were employees of the Athletic Club and it was their duty to prevent nonmembers from entering. Howerton found a number of people drinking at the bar, and he purchased a scotch and soda for 60 cents. He then went back to the Hollywood Dinner Club, but about thirty minutes later again returned to the Athletic Club and had the waiter bring him another scotch and soda. He then went from the bar room into the pool room where Sam Maceo was. He and Sam went to the bar room and had a drink together. Sam Maceo told him the place was his. The inspector later returned to the Hollywood Dinner Club through the connecting passageway and left.

Two days later the inspector returned. This time he was stopped by one of the two who testified it was their duty to keep nonmembers out. The inspector was required to give his name, and produce means of identification. He told the men he was not a member of the club, and was told by one of these men he could enter; but the other refused him admittance, saying that his (the inspector's) name was on a list issued by the management. The inspector then asked for Sam Maceo. When Sam Maceo came, he asked the inspector how he had effected his entrance on the first occasion, and was told that he just walked in with a large crowd. Sam Maceo said that this would cost some employee his job. Sam Maceo then told the inspector he didn't know if he had a case but that he did believe he was in a position to hurt the establishment. When the waiter brought the inspector's bill, and was receiving the money in payment for it, Sam Maceo took the money from the waiter and returned it, but the inspector insisted on paying the bill. When the inspector left, Sam Maceo went with him in the inspector's car. He told the inspector he believed he was in a position to hurt or help him (Sam Maceo) provided he already had a case against the Hollywood Dinner Club, and then tried to hand the inspector money, who said he'd like time to think it over.

It was shown at the tables in the Hollywood Dinner Club matches were placed with covers on which were printed this advertisement: "Hollywood Dinner Club, Galveston, Texas, Sam Maceo, Managing Director."

The records of the telephone company reflect that the switchboard at the Hollywood Dinner Club was installed June 8, 1936, the application therefor being signed by Sam Maceo; there being three trunk lines and eight telephones. There was no record of the Athletic Club having telephones at this property.

The original water contract was in the name of the Hollywood Dinner Club, dated June 4, 1926, and there was no record of

the Athletic Club having water connections at this property.

The records of the Gas Company showed the contract with the Hollywood Dinner Club, signed June 21, 1933, was applied for by Sam Maceo, and there was no record of any contract for gas on this property with the Turf Athletic Club.

I think that the fact that the Hollywood Dinner Club was being served by the public service utilities under contracts signed on behalf of the Hollywood Dinner Club by Sam Maceo at the time in question tends to prove that Sam Maceo exercised authority for said Club, and to raise an issue as to whether he possessed the authority he exercised, in connection therewith.

I think that the authority he exercised in taking the money from the waiter and trying to hand it back to the inspector when the inspector was paying his bill tends to raise the issue whether he in fact had the authority he was exercising.

I think his concern, displayed at the time he learned who the inspector was, as to whether the inspector had a case against the Hollywood Dinner Club, is cumulative of the other evidence.

I think the fact that the match covers which were placed at the tables of Hollywood Dinner Club for the use of customers, and which advertised to such customers that Sam Maceo was the managing director, tended to establish that they were placed there by authority, and that the customers were authorized to believe such representation by the operator of the Dinner Club, is a legitimate inference which the Administrator might draw.

Frank Maceo did not testify at the hearing. He knew whether or not Sam Maceo was his agent. He had the right of course not to testify. But if he exercised such right, the natural inference is that he concluded it would serve his interest better not to tell what he knew. It is true that Frank Maceo's failure to testify is only negative evidence against him, but I do not see how it can be said, in light of the foregoing evidence, that no weight can be attached to the inference which it authorizes. So much attaches to the failure of an accused to testify that the law will not permit a prosecutor to comment on it. And in civil cases it is well known that the negative evidence, indicated by the failure of a party to a suit to testify where it would be natural for him to testify unless his testimony would be injurious to him, is not without weight, and is usually commented on in argument before the jury.

As it seems to me there was sufficient evidence before the Administrator, in support of second finding of fact, to meet the test as to what is substantial evidence, i. e., enough to make an issue to go to the jury in a civil case, so as to make an instructed verdict there against erroneous, I must respectfully dissent from the majority.